# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**HENRY L. KLEIN - D.C. Bar Number LA0003**,    \*
individually and on behalf of others similarly    \*
situated and Levy Gardens Partners 2007 LP    \*
844 Baronne Street, New Orleans, LA 70113    \*
   \*
versus    \*    CIVIL ACTION
   \*
**STEVEN TERNER MNUCHIN**, in his    \*
capacity as the Secretary of the Department    \*
of the Treasury and as the director of the Federal    \*
Insurance Office established by the *2010*    \*
*DODD-FRANK WALL STREET REFORM*    \*
*AND CONSUMER PROTECTION ACT*    \*
United States Department of the Treasury    \*
1500 Pennsylvania Avenue NW    \*
Washington, D.C. 20220    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORIGINAL COMPLAINT FOR MANDAMUS

*In a case of first impression vis-a-vis the Secretary of the Treasury*, the gravamen of the complaint brought by Henry L. Klein and Levy Gardens Partners 2007 LP is as follows:

*EACH YEAR SINCE DODD-FRANK, THE DEPARTMENT OF THE TREASURY HAS REPORTED TO (i) THE PRESIDENT OF THE UNITED STATES, (ii) THE HOUSE COMMITEE ON FINANCIAL SERVICES and (iii) THE SENATE COMMITTEE ON BANKING, HOUSING AND URBAN AFFAIRS ON THE HEALTH OF THE INSURANCE INDUSTRY IN THE UNITED STATES*

*YET...*

**THE REPORTS BY THE DEPARTMENT OF THE TREASURY PURSUANT TO TITLE V OF THE DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT HAVE NEVER INCLUDED THE "...TITLE INSURANCE..." SECTOR OF THE INDUSTRY.**

*AS DETAILED BELOW, THE TITLE INSURANCE INDUSTRY BILKS THE AMERICAN CONSUMER OUT OF FORTY-THREE MILLION ($43,000,000) DOLLARS A DAY, PAYING LESS THAN 4% OF PREMIUMS COLLECTED[1].*

## I.   JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the Constitution and Laws of the United States, specifically Title V of the *Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010*, Public Law 111-203.

2.     This court has jurisdiction pursuant to 28 U.S.C. § 1361, which provides:

> **§ 1361.   Action to compel an officer of the United States to perform his duty**
> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

3.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e) in that the Secretary of the Treasury is an officer or employee of the United States and the failures to carry out Congressional mandates occurred in the District of Columbia where Defendant Mnuchin is found and maintains his cabinet position at 1500 Pennsylvania Avenue NW, Washington D.C., 20220.

## II.   ALTERNATIVE RELIEF SOUGHT

4.     The only *plausible* reason Treasury did not include "title insurance" in its annual Dodd-Frank reports is because it's not insurance; after all, title policies (i) are retrospective; (ii) do not redistribute risk *a futuro*; (iii) charge a one-time *fee* and not a "...premium...", (iv) contractually warrant title at the micro-moment a transfer is recorded; (v) are not meaningfully regulated by state law; (vi) cannot generate actuarial statistics for  Risk-Based-Capital reporting purposes, and (vii) cannot meet the Supreme Court's definition of "...insurance..." per *Group Life & Health Insurance Company v. Royal Drug Company*, 440 U.S. 205 (1979) and *FTC v. TICOR Title*, 504 U.S. 621 (1992), among other compelling cases and vigorous documentaries calling for the guillotine to fall.

---

[1]     On November 11, we appealed directly to Secretary Mnuchin and asked to meet, Exhibit A.   Based on full-year results from *title* industry statistician Demotech, the industry's ***daily*** rake was from $43 million or $46 million. The latest statistics are made Exhibit B.

5.    Without a concession by Secretary Mnuchin *and* a judicial declaration by this Court that title policies are *not* "...contracts of insurance...", the Department of the Treasury ***must*** supplement its 2011-2017 Annual Reports to include title insurance, as clearly mandated by Congress in the 2010 Dodd-Frank Wall-Street Reform and Consumer Protection Act ("the Act")[2].

### III.    PARTIES AND "STANDING"

6.    Because the Act was passed to protect *all* citizens and taxpayers from "...abusive financial services..." (such as the sale of a mislabeled product that has no value), both plaintiffs have (i) *general* standing as citizens and consumers and (ii) *specific* standing as multimillion-dollar victims of the "...abusive financial services..." rampant in the alleged title insurance industry[3].

7.    Moreover, lead plaintiff Henry L. Klein was recognized as having "...Article III Standing..." in the matter of *Klein v. The American Land Title Association, Fidelity National Financial Group, First American Title Insurance Company, Stewart Title Guaranty Company and Old Republic National Title Insurance Company*, D. C. Docket 12-1061 RBW.

8.    To be sure, the 12(b)(6) dismissal in *Klein v. ALTA* was limited to lack of anti-trust standing and did nothing to diminish the Article III right to seek §1361 Mandamus to the Secretary of the Treasury to *include* the title insurance sector in the Annual Reports to the President, the House and the Senate as required by Dodd-Frank at Title V, *infra*.

9.    Stated differently, neither the Secretary of the Treasury nor the FIO had the luxury of *excluding* the title insurance sector from the rigors of:

> "...monitoring *all* aspects of the insurance industry and identifying issues or gaps in the regulation of insurers that could contribute to a systemic crisis in the insurance industry or the United States financial system..."

---

[2]    Declaratory relief and mandamus are treated interchangeably, *Haines v. Secretary of the Air Force*, 453 F.2d 233 (3rd Cir. 1971). Our principal cause is in the nature of mandamus.

[3]    Not the least deplored of all abusive financial services is "...splitting premiums..." between lawyers who produce the business and the insurance underwriter wherein the lawyers who handle the closing keep 80% of the premiums collected and give 20% to the title insurer, a matter which occurred in *Klein v. Lewis Title*, described by RESPA as a "kickback", *infra*.

10.     As further grounds for recognizing "standing" to seek mandamus, Klein conducted a survey of the National Association of Insurance Commissioners ("NAIC") to establish that the business of *title* insurance is *not* regulated by state law in the manner described by the D.C. Circuit in *Proctor v. State Farm*, 561 F.2d 262 (D.C. Cir.1977).

11.     A second survey of the NAIC by Klein led to the exposure that all states but Iowa have given title insurance companies a "free pass" on Risk-Based Capital Reporting, a poisoned arrow for the quiver against this *de-regulated* industry, giving lead plaintiff Klein powerful "standing" to bring this mandamus action against the Secretary as a matter of public interest in pursuit of strict enforcement of Dodd-Frank mandates, *Association of Data Processing Service Organizations v. Camp*, 406 F. 2d 837 (8th Cir. 1969) (*a plaintiff may pursue a 'public interest'....[if he is] significantly involved to have standing to represent the public...'*"

12.     Corporate plaintiff Levy Gardens Partners 2007 LP has significant "standing" as the purchaser of THIRTY-FIVE MILLION, SIXTY-THREE THOUSAND, SIX HUNDRED AND EIGHTEEN ($35,063,618) DOLLARS of worthless insurance policies at an October, 2008 closing conducted by a law firm with a captive insurance agency, an "...abusive financial service..." deplored by HUD in the passage of the Real Estate Settlement Procedures Act ("RESPA") and other laws ignored at will. See, GAO April 2007 Report *Title Insurance Actions Needed to Improve Oversight of the Title Industry and Better Protect Consumers*.

#### IV.     RIGHT TO A WRIT OF MANDAMUS:
#### THE "...ZONE OF INTERESTS..." TEST

13.     Fundamentally, a mandamus plaintiff must establish (1) that he has a clear right to the relief sought, (2) that the mandamus-defendant owes the mandamus-plaintiff a duty to perform the task in question, and (3) that there are no other *adequate* remedies available.

14.     In answering these threshold questions, courts apply the "..zone of interests..." test, meaning that the interests the plaintiff seeks to protect by mandamus are within "...those zones of interests to be protected or regulated by the statute in question...", *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970).

– 4 –

15.     This being "...a case of first impression..." in that the Secretary of the Treasury has *never* been challenged for leaving gaps in the *scope* of the Annual Title V Reports, the proper (and perhaps only) recourse is to look to the *legislation* to see what Congress intended in the passage of the law at issue.

16.     Dodd-Frank Title V was devoted *exclusively* to the insurance industry and established the Federal Insurance Office ("FIO") as the monitor; but nothing in Dodd-Frank gave FIO "...discretion..." to exclude title insurance from the ambit of Title V.

17.     Pursuant to § 313(c)(1)(A), the FIO was charged with monitoring

> "...*all* aspects of the insurance industry, including identifying issues or gaps in the regulation of insurers that could contribute to a systemic crisis in the insurance industry or the United States financial system".

18.     Bilking the American Consumer out of $43,000,000 *daily* constitutes or "...could contribute to a systemic crisis in the insurance industry or the United States financial system...".

19.     Pursuant to § 313(n)(2), the Director of the FIO was charged with the following obligation as described at §303(d):

> "Beginning September 30, 2011, the Director *shall* submit a report on or before September 30 of each calendar year to the President and to the Committee on Financial Services of the House of Representatives and the Committee on Banking, Housing and Urban Affairs of the Senate on the insurance industry and any other information deemed relevant by the Director or requested by such committees."

20.     Pursuant to § 313(p)(1) the FIO was instructed as follows:

> "Not later than 18 months after the date of enactment of this section, the Director *shall* conduct a study and submit a report to Congress on how to modernize and improve the system of insurance regulation in the United States.

21.     Pursuant to § 313(p)(2), the FIO was instructed to include "...consumer protection..." and "...gaps in state regulation..." in the mandatory process, meaning that the issues raised herein do not involve "...discretionary..." matters and mandamus must issue (unless it's not "...insurance...").

## V.   APPLICABLE MANDAMUS LAW

22.      It is undisputed that § 1361 Mandamus is a remedy to be invoked only in the most extraordinary circumstances, *In re: Papandreou*, 139 F.3d 247 (D.C. Cir. 1998), *Consolidated Edison v. Ashcroft*, 286 F.3d 600 (D.C. Cir. 2002).

23.      § 1361 Mandamus is available when a public official violates or fails to perform a purely "...ministerial duty..." not involving discretionary judgment, *Cartier v. Secretary of State*, 506 F.2d 191, (D.C. Cir.1974).

24.      Here, the Secretary of the Treasury made *no* report to the President, the Senate and/or the House of Representatives for the years 2011, 2012, 2013, 2014, 2016 and 2017 regarding the *title* insurance industry, a luxury the Secretary did not have.

25.      In "...briefly..." addressing the subject of title insurance in the 2015 Report, the FIO recognized (but did nothing about) several investigations into abusive financial services, including the New York Department of Financial Services' discovery that "...title insurers were annually spending millions of dollars on meals, entertainment, and gifts for attorneys and other real estate professionals who order title insurance on behalf of their clients...", Exhibit C.

26.      While a Writ of Mandamus will not dictate to FIO on how to deal with patent financial abuses in the title sector, the writ *will* require that the ministerial task of *reporting* to the President, the House and the Senate the existence of the $43 million daily fleecing of the consumer.

27.      Because mandamus law gives the courts discretion to issue (or not to issue) the § 1361 writ sought hereby, we cite compelling facts that support the request *sub judice*, including Scott Woolley's most-often declaration, *Inside America's Richest Insurance Racket*, Forbes, November 13, 2006:

> **"TITLE INSURANCE FIRMS RAKE IN $18 BILLION A YEAR FOR A PRODUCT THAT IS OUTDATED, LARGELY UNNEEDED AND PROTECTED BY LAW.[4]"**

---

[4]      $18,000,000,000 divided by 365 equals $49,315,068 per day.  We have elected, however, to cite more conservative statistics from Demotech, Inc. for prior years, which round out the *per diem* rake to $43 Million.

28.     As we further establish, both plaintiffs meet the mandamus test of being "...significantly involved to have standing to represent the public interest..." as set forth in *Association of Data Processing*, *supra*, at 843 (*reversed in favor of "standing" for other reasons at 397 U.S. 150).*

## VI.   *HENRY L. KLEIN v. LEWIS TITLE AND LISKOW & LEWIS*

29.     Disappointed but not defeated by the final outcome in *Klein v. ALTA*, on February 15, 2017, a Petition for Declaratory Judgment was filed in the Louisiana State Civil District Court for the Parish of Orleans, entitled *Henry L. Klein, the Succession of Frederick P. Heisler and Levy Gardens Partners 2007 LP v. Lewis Title Insurance Company, Inc., Liskow & Lewis, PLC and Jeffrey Martin "Jeff" Landry, Attorney General of the State of Louisiana*[5].

30.     After Lewis Title removed the case to the United States District Court for the Eastern District of Louisiana, Docket 17-2205, the issue presented in *this* Complaint was raised and argued to the Honorable Nannette Jolivette Brown, whose analysis at Document 41 provides valuable guidance as to the seminal question: is it or is it not insurance?

31.     Because of its thorough and even-handed explanation of *both* sides to the controversy, the Memorandum Opinion by Judge Brown in *Klein v. Lewis Title* is made Exhibit D hereto, with the following quote replicated *in totidem verbis*[6]:

_____

[5]     As to the "...disappointed but not defeated..." comment, lead plaintiff Klein concluded his writ application to the United States Supreme Court with a pledge:

> *"In landmark cases, the landmark litigant is often forced to tolerate significant abuse before any wrong can be corrected. Fighting for reform exacts a higher price than sitting idly by.*
>
> *When petitioner was 'awarded' $605,000 on over $18 million in illusory [owner's] coverage, he pledged to God and to himself that what happened to Levy Gardens should never happen to anyone again."*

[6]     Although filing an entire memorandum opinion as an "exhibit" is unusual, we consider Document 41 in *Klein v. Lewis Title* to be the "bible" in terms of articulating the issues from both sides and understanding the analysis that must be made and how to proceed.

"...it appears from Plaintiff's Petition for Damages that Plaintiffs cite to *Group Life Insurance Company* is simply to include the Supreme Court's discussion of what constitutes "insurance", such as the Supreme Court's holding that 'risk underwriting' is an 'indispensable characteristic of insurance' and requires 'some element of spreading risk more widely', which Plaintiffs appear to allege supports their argument that the underlying contracts at issue are not 'contracts of insurance'.

## VII.   UNCONSCIONABLE LEVEL OF "...THE FLEECING OF AMERICA..."

32.     In Secretary Mnuchin's decision-making process to either (i) stipulate that title policies are not "...contracts of insurance..." as Judge Brown left that question open for further consideration in *Klein v. Lewis Title* or (ii) to supplement the Title V Annual Reports for 2011, 2012, 2013, 2014, 2015, 2016 and 2017, both Secretary Mnuchin and this court should consider the unconscionable level of what has been described by the Iowa State Bar Association as "A FLEECING OF AMERICA", Exhibit E, and the fully documented 220-page book by the distinguished Professors Eaton, "THE AMERICAN TITLE INSURANCE INDUSTRY: *How a Cartel Fleeces the American Consumer"* Exhibit F.

33.     From the Third Quarter *Market Share Report* for 2017, Demotech, Inc. reports the following performance statistics for the following Underwriters, exposing the percentages of claims paid against premiums collected:

| UNDERWRITER | PREMIUMS | PAYMENTS | % PAID |
|---|---|---|---|
| Agents National | $ 5,585,157 | $ 312,228 | 5.559% |
| Alamo | $ 57,168,938 | $ 2,734,217 | 4.782% |
| Alliant | $ 91,104,799 | $ 1,292,746 | 1.418% |
| American Eagle | $ 6,203,028 | $ zero | 0.000% |
| American Guaranty | $ 24,311,268 | $ 208,861 | 0859% |
| American Security | $ 3,082,056 | $ 3,645 | 0.118% |
| Amrock | $ 9,558,438 | $ zero | 0.000% |
| Amtrust | $ 12,781,624 | $ zero | 0.000% |
| Arsenal | $ 4,248,831 | $ zero | 0.000% |

| | | | |
|---|---|---|---|
| Attorneys (COL) | $ 10,140,499 | $ 297,348 | 2.932% |
| Attorneys (ILL) | $ 45,843,235 | $ 613,350 | 1.337% |
| Bankers | $ 3,088 | $ zero | 0.000% |
| Chicago | $1,591,979,246 | $ 69,088,043 | 4.339% |
| Commonwealth | $ 511,306,807 | $ 24,826,428 | 4.855% |
| Conestoga | $ 5,790,699 | $ 241,430 | 4.169% |
| CT Attorneys | $ 75,648,560 | $ 2,564,640 | 3.390% |
| Dakota Homestead | $ 1,371,105 | $ 23,906 | 1.743 |
| Entitle | $ 7,311,519 | $ 909,048 | 1.243% |
| Fidelity National | $1,427,388,840 | $ 65,052,017 | 4.557% |
| First American (LA) | $ 38,346,031 | $ 501,730 | 1.308% |
| First American TGC | $ 104,744,360 | $ 919,625 | 0.878% |
| First American TIC | $2,597,333,504 | $ 120,018,336 | 4.602% |
| First National | $ 72,069,929 | $ 303,924 | 0.422% |
| General | $ 8,413,996 | $ 61,782 | 0.734% |
| Investors TIC | $ 83,633,316 | $ 2,690,558 | 3.217% |
| Iowa Guaranty | Title Insurance Declared Illegal in 1947 | | |
| Land Corp (COL) | $ 29,735,069 | $ 297,434 | 1.000% |
| National Consumer | $ 4,221 | $ zero | 0.000% |
| National Investors | $ 20,153,555 | $ 122,159 | 0.920% |
| National New York | $ 50,841,730 | $ 1,738,768 | 3.420% |
| North American | $ 186,739,862 | $ 3,600,358 | 1.928% |
| Ohio Bar | $ 12,226,035 | $ 336,419 | 2.751% |
| Old Republic | $1,590,799,390 | $ 38,894,773 | 2.445% |
| One Title | $ 692,024 | $ 24,579 | 3.551% |
| Premier Land | $ 20,951,426 | $ 100,669 | 0.480% |
| Real Advantage | $ 19,286,215 | $ 63,581 | 0.329% |
| Security TG | $ 33,687,466 | $ 109,959 | 0.326% |
| Sierra | $ 1,624,760 | $ 4,328 | 0.266% |
| Southwest Land | $ 1,824,760 | $ 665 | 0.036% |
| Stewart TGC | $ 997,758,533 | $ 51,598,989 | 5.171% |
| Stewart TIC | $ 154,357,726 | $ 3,006,982 | 1.948% |
| Title Resources | $ 240,953,906 | $ 2,095,846 | 0.871% |

| | | | | |
|---|---|---|---|---|
| U.S. National TIC | $ | 641,950 | $ | zero | 0.000% |
| Westcor | $ | 377,822,052 | $ | 5,670,106 | 1.501% |
| WFG National | $ | 269,779,866 | $ | 6,608,749 | 2.450% |
| Totals | | $10,805,249,419 | $ 406,938,226 | 3.766% |

34.     Manifestly, no one is protecting some of the largest and most vulnerable consumers in America, as Mr. Justice Jackson recognized in *Unted States v. Southeastern Underwriters*, 232 U.S. 523 (1944):

> "Perhaps no modern commercial enterprise directly affects so many persons in all walks of life as does the insurance business.  Insurance touches the home, the family and the occupation or the business of amost every person in the United States."

.

## VIII.     VOICES OF REASON

35.     Because § 1361 Mandamus is an equitable remedy, at a court's discretion to issue or not to issue, we provide evidence from other sources as compelling that either alternative at bar be expeditiously rendered:

> ☐     If as a matter of fact and a matter of law the contracts sold are "...insurance..." a Writ of Mandamus should issue, addressed to the Honorable Steven Terner Mnuchin, requiring that the necessary ministerial steps be taken to include the title insurance sector of the industry in the annual reports to (i) the President of the United States, (ii) the House Committee on Financial Services, and (iii) the Senate Committee on Banking, Housing and Urban Affairs.

> ☐     However, if as a matter of fact and a matter of law the contracts sold are not "...insurance...", this Court should, pursuant expeditiously enter an order pursuant to 28 U.S.C. § 2201 so declaring, which order will have "...the force and effect of a final judgment or decree and shall be reviewable as such."

36.     We respectfully call attention to the significant chorus of "...voices of reason..." which will support a declaration that the product sold is simply not "...insurance...", in which case there will be no need to mandate that the Title V Reports be supplemented and the title sector be monitored.

37.     We begin with the distinguished legal analyst, Joyce Palomar, the Kenneth E. McAfee

Chair in Law Emeritus and the Ada Lois Sipuel Fisher Presidential Professor of Law at the Oklahoma

College of Law, who has made the following sage comments in her 2017 Edition of *The Law of Title*

*Insurance*:

- ❏     Title insurance, as opposed to other types of insurance, does not insure
  against future events, *Jourdanelle v. Old Republic*, 830 F.3d 1195,
  *Vestin Mortgage v. First American Title*, 101 P.3d 398.

- ❏     Title insurance is protection against future loss because of past events,
  *Lawyer's Title v. Novastar Mortgage*, 862 So.2d 793.

- ❏     Title insurance does not insure against future events, but against defects
  in title existing at the time when the policy was issued, *Foenrenbach v.
  German-American Title & Trust Co.* 66 A. 561.

38.     Particularly compelling is Professor Palomar's citation of a century-old legal maxim

at footnote one of her latest text on the subject **§ 5:2   Insurance "as of the date of the policy"**

> "A 1903 judicial assessment of title insurance that continues to be
> quoted today is that "the risks of title insurance end where the risks of
> other kinds begin." Trenton Potteries v. Title Guarantee and Trust Co.,
> 176 N.Y.65; 68 N. E. 132 (1903), citing authorities supporting the
> concept of *ending* coverage on the date of issue.

39.     The following reports, published prior to the passage of Dodd-Frank and prior to the

creation of the FIO, will further assist the Court in ruling in this case:

- ❏     1977 Report by the United States Department of Justice: *"The Pricing
  and Marketing of Insurance:  A Report by the Department of Justice to
  the Task Group on Anti-Trust Immunities."*

- ❏     1980 Peat Marwick Study conducted for the United States Department
  of Housing and Urban Development on issues raised by the sale of title
  insurance.

- ❏     2007 Consumer Federation of America Report on the absence of
  competitive market forces in (i) an industry which is oligopolistic (ii)
  for a product whose demand is inelastic (iii) in an industry where
  reverse competition is the norm, (iv) kickback schemes prevail, (v)
  resulting in super-normal profits.

- ❏     2007 Government Accountability Office Report: "*Actions needed to
  Improve Oversight of the Title Industry and Better Protect Consumers*"

40.     The industry detractors who have been calling for the guillotine to fall upon the _title_ industry for years are substantial: _Inside America's Richest Insurance Racket_, Scott Woolley, Forbes, November 13, 2006; _Why Title Insurance?_, Albert Rush, Mortgage Banker, August 2000; _How Long Will the Good Times Roll?_ Auden and Palowski Special Report, March 20, 2008; _Title Insurance: is it wanted here?_ New South Wales Law Journal, November 2002; _Title Insurance: Getting Ripped Off?_ Les Cristie, Good Morning America, January 11, 2006; _Title Insurance Profits Excessive by Any Measure_, Bernard Birnbaum, Report to California Insurance Commissioner, December, 2005; _The Antitrust Suits and Public Understanding of Insurance_, George Priest, Vol 63, Tulane Law Review; _Despite Fines, Insurers likely to Keep Giving Kickbacks_, Los Angeles Business Journal, November 1, 1999; _Fidelity to Refund $2.2M to Florida Residents, Fined $1M_, The Title Report, September 2005; _Major Players in Title Industry Stifle Reform_, Jack Guttentag, Inman News, July 3, 2006; and _The American Title Insurance Industry: How a Cartel Fleeces the American Consumer_, Eaton & Eaton, NYU Press, 2007.

## IX.   IT'S NOT "...INSURANCE..." IF IT IS DE-REGULATED

41.     The title insurance industry is not only "ill-regulated", but every state has confirmed in a Freedom of Information survey conducted by lead plaintiff Klein that title insurance firms are actually _de-regulated_ by the following states, each of which has given the title industry a "free pass" from the rigors of filing Risk-Based Capital Reports[7]:

> Alabama: Alabama Code § 27-3-7;
> Alaska: A.S.A. 21:09.070;
> Arizona: R.S. § 20-1561(C);
> Arkansas: Ark. Code Ann. § 23-63-1302(8)(B)(iii);
> California: Exempted by NAIC regulations;
> Colorado: Exempted by NAIC regulations;
> Connecticut: Insurance Code § 38a-72-1(h);
> Delaware: Title 18, § 5801(7);

---

[7]     Because  § 313(c)(1)(A) of Title V called for FIO to identify "...gaps in the regulation of insurers...", this failure is an unforgivable shortcoming.

District of Columbia: DC Statutes § 31-2001(10);

Florida: Title XXVII, Chapter 624.4085(j);

Georgia: Georgia Code § 33-56-1(8);

Hawaii: Exempted by NAIC regulations;

Idaho: Insurers Act § 41-5401(8);

Illinois: 215 I.C.S. § 5/35A-5;

Indiana: Indiana Code § 27-7-3;

Iowa: **Title Insurance Prohibited**;

Kansas: Exempted by NAIC regulations;

Kentucky: 806 K.R. 3:190 § 7;

Louisiana: La. R.S. 22:6(9);

Maine: Title 24, M.R.S. § 6451;

Maryland: Exempted by NAIC regulations;

Massachusetts: 211 C.M.R. § 20.01;

Michigan: Exempted by NAIC regulations;

Minnesota: M.S.A. § 60A.60(8);

Mississippi: Miss. Code Ann § 83-5-401(g);

Missouri: Title 18 § 5801(7);

Montana: M.C.A. § 33-2-1902.210(iii)(b);

Nebraska: Stock § 44-214, Risk Based Capital Act C;

Nevada: Exempted by NAIC regulations;

New Hampshire: NH R.S.A. § 416-A;

New Jersey: N.J.S.A. § 17:46B-10.1;

Minnesota: MN Stat. § 60A.60(8);

New York: NY Insurance Law § 1324;

North Carolina: Exempted by NAIC regulations;

North Dakota: Exempted by NAIC regulations;

Ohio: Exempted by NAIC regulations;

Oklahoma: O.S. Title 365 § 203-5;

Oregon: Exempted by NAIC regulations;

Pennsylvania: Exempted by NAIC regulations;

S. Dakota: S.D.C.L. § 58-4-48;

Tennessee: TCA § 56-35-112;

Texas: 28 TAC § 7.401(a)(2);

Utah: Exempted by NAIC regulations;

Vermont: Exempted by NAIC regulations;

Virginia: VA Risk-Based Capital Act § 8.2-5500;

Washington: R.C.W. § 48.05.340;

W. Virginia: W.Va.Code § 33-3-5b;

Wisconsin: Exempted by NAIC regulations; and

Wyoming: W.S. § 26-48-101(a)(iii) & (iv).

## X.    EXPEDITED CONSIDERATION AND RELIEF REQUESTSED

42.     Because the fleecing of the American consumer is so egregious and the decision is clear-cut (one way or the other), this Court should call for an expeditious decision by the Secretary of the Treasury; should the Secretary decide that the subject product and services are not "insurance", we will seek class certification of all those who have victimized by the abusive financial services exposed.

43.     As analyzed by the court in *Klein v. Lewis Ttle*, this case can only have two results, its either "...insurance..." or not.

44.     A proposed Writ of Mandamus is filed herewith and the Court is requested to ORDER the Honorable Steven Terner Mnuchin, as Secretary of the Department of the Treasury of the United States of America and as the Director of the Federal Insurance Office established by the *2010 Dodd-Frank Wall Street Reform and Consumer Protection Act* to show cause, if any he have or can, why he should not supplement the Annual Title V Reports for the years 2011, 2012, 2013, 2014, 2015, 2016 and 2017 to include a complete report on the *title* insurance sector of the insurance industry.

Respectfully submitted,


 /s/ Henry L. Klein                                    
**Henry L. Klein,    DC Bar Number LA0003**
844 Baronne Street
New Orleans, LA 70113
504-301-3027
henryklein44@gmail.com

-14-